Marsh *v.* Chamberlain.

---

SIDNEY · S. MARSH, Supervisor, &c., Respondent, *v.* THOMAS I. CHAMBERLAIN and others, Executors, &c., Appellants.

(GENERAL TERM, EIGHTH DISTRICT, FEBRUARY, 1870.)

The supervisors of Cattaraugus county had power under the act of April 17, 1865 (chap. 479, p. 860), to appoint three building commissioners, to locate and erect county buildings at Little Valley, who should have authority to consider donations of land and money in determining the location; by their resolution of appointment they directed their appointees to select and procure the title to a proper site for a sum not exceeding one dollar, and to proceed to erect the buildings thereon, but neither to obtain the title, nor take any binding steps until security should be given by bond of individuals and otherwise, guaranteeing payment for erection of the buildings without expense to the county.—*Held*, that the power to accept donations of money was vested in the supervisors, by whom provision for supplying the means to erect the buildings had to be made, and not in the building commissioners, and that a bond given as security for payment of donations, under the resolution, was within the policy of the law and valid.

And the said building commissioners having proceeded according to the terms of the resolution to locate, erect and furnish the county buildings, in part upon the faith of a bond given to secure payment of money promised in that respect.—*Held*, that such bond was founded upon sufficient consideration.

And that one who had at the day of its date and before delivery indorsed upon the same over his signature, "I guarantee payment of the within bond," was bound by the guarantee, and that this was so irrespectively of the amendment of the statute of frauds. (1863, chap 464.)

The act of 1868 (chap. 13, § 1), authorizing an assignment of the bond to the supervisor of Little Valley.—*Held*, that an assignment made to said supervisor of the same with the guarantee, would be presumed to have been made under that act.

And any two of the building commissioners being authorized to erect the county buildings (1865, chap. 361, § 3).—*Held*, that an assignment of such bond and guarantee by that number of said commissioners was sufficient as an act incidental to the duties devolved upon them.

THE commissioners appointed by the governor under chapter 479 of the Laws of 1865, selected the village of Little Valley, in the county of Cattaraugus, as a proper place for the erection of the county buildings, including a court-house, clerk's office, and other offices and rooms, and a county jail. At a meeting of the board of supervisors of the county, held on the 15th of November, 1866, Frank L. Stowell, Lemuel S. Jenks, and John Manley, were appointed commissioners to select and determine upon a proper site in that village, not less than five acres in extent, for the erection of such buildings, to procure the title to such site at an expense to the county, not exceeding one dollar, and to proceed immediately with the erection of such buildings, according to the third section of that act. But before they took the title to the land, or did any other act that should commit the county to the removal of the county site, they were required to receive bonds from the towns of Little Valley and Napoli, and individual bonds, money and materials of sufficient amount, not less than $30,000 in amount and value, to guarantee the erection and completion of the buildings provided for, and to insure the county against any and all taxation for the erection and completion of the buildings, or the sale therefor. And the commissioners were further instructed by

Marsh v. Chamberlain.

the board to accept bonds of individuals, payable in money or materials, which might be guaranteed by responsible parties satisfactory to them, or which might be accepted by contractors, or to accept sums of money. And it was further resolved by the board that such bonds, materials and money should be used for the purpose of erecting such county buildings in the village of Little Valley, and for no other purpose. On the 24th of November, 1866, John Manley executed and delivered his bond to Lyman Twomley, who was then supervisor of the town of Little Valley, by which he bound himself to pay to the commissioners or their successors in office the sum of $2,000 on demand, for the purpose of erecting the necessary county buildings. This bond on the same day was guaranteed by the testator by an indorsement made thereon, and subscribed by him in the following words: "I guarantee the payment of the within bond." It appeared that nothing was paid for the bond or the guarantee. And that the commissioners immediately qualified as required by law and the resolution appointing them, and entered upon the duties of their office, and erected the county buildings at Little Valley. The bond and guarantee upon it were assigned by two of the commissioners to Lyman Twomley, the supervisor of the town of Little Valley, on the 20th day of March, 1868. And the plaintiff in this action is his successor in office. Chapters 479 of the Laws of 1865, 566 of the Laws of 1867, and thirteen of the laws of 1868, were given in evidence on the trial. The defendants moved the court for a nonsuit on these facts. That motion was denied, and the defendants excepted. The court directed judgment for the plaintiff, and to that the defendants excepted. From the judgment entered in accordance with that decision the defendants appealed.

*Henderson & Wentworth*, for the appellants.

*D. H. Bolles*, for the respondent.

Present—BARKER, E. D. SMITH and DANIELS, JJ.

Marsh v. Chamberlain.

By the Court—DANIELS, J.   Under the resolution of the board of supervisors appointing the commissioners, they were in substance empowered and directed to select, and acquire the title to five acres of land in the village of Little Valley, as a site for the county buildings, and to proceed and erect such buildings upon it, only in case that could be accomplished by the voluntary contributions of individuals, and of the two towns mentioned in the resolution.   It seems to have been contemplated that the land could be secured and the buildings erected upon it without subjecting the county to the burden of bearing any portion of the expenses; and the commissioners were appointed to accomplish that end in that manner, and not otherwise.   If that could not be done then the new county buildings were not to be erected by them. If it could, then they were to secure the performance of the work.   There was clearly no provision of any statute, nor any principle of the common law, which either expressly or impliedly forbid the county authorities from adopting that course for the acquisition of the necessary ground, and the erection of the county buildings upon it.   If the board had reason for concluding that they could safely rely upon the generosity of the two towns, and of individual citizens who felt interested in and desired the success of the enterprise, for the donation of the land and the contribution of the materials and money which would be required to put up and complete the buildings, neither the law nor public policy prevented it from doing so.   On the contrary, it was a discreet and judicious exercise of the authority which had been conferred upon it, for the purpose of securing the erection of the new county buildings.   And it was in conformity with the spirit of the act under which they proceeded, which directed the commissioners, who were to be appointed by the governor, to designate the place to which the county buildings might be removed, to take into consideration, for the purpose of affecting or influencing their conclusion on that subject, any donations of land for a county site, or money to defray the expenses of building the county buildings. (Laws of 1865,

Marsh v. Chamberlain.

864, § 13.)   As the commissioners who were to consider those donations for that purpose had no authority to accept them, and no such authority was placed anywhere by the act, it must have been intended that they were to consider the dona tions, which might be simply offered, for those purposes, and that they could afterward be accepted and received by the authorities of the county, in case the change determined upon should be actually made.   It must have been donations of land and money proposed, that these commissioners were thus empowered to consider in their designation of the county site, as distinguished from donations actually made.   And they were evidently only authorized to consider them, because they might afterward be reasonably expected to be available for the location and erection of the county buildings.   And that constructively empowered, the board of supervisors, when it afterward came to provide measures for the erection of the county buildings, to take the course which it did for the purpose of securing the donations proposed to be made.   If those afterward offered were not within the expressed design and object of the act, they were evidently so clearly within its policy as to prevent contracts made concerning them from being declared unlawful as opposed to public policy.   For they contributed to the accomplishment of the results, which the act contemplated might be partially or wholly secured by private donations and benefactions.   And as no particular mode was provided by the law, through which that might be done, the board were necessarily left at liberty to adopt any course adapted to that end, which expediency and convenience might suggest.   And no objection in either respect can well be urged against that which was provided by the resolution.   If there were any, it was removed by the act of 1867, which declared the bonds and obligations taken by the commissioners, acting under the resolution of the board, to be valid and binding, and provided for their collection by them. (Laws of 1867, 1525, § 5.)

When the bond of Manley, with the testator's guarantee,

was taken by the commissioners, it was in no sense whatever an unlawful contract, but one which was binding upon the parties, if founded upon a sufficient consideration. The board itself declared that the money which the obligor bound himself to pay, was to be paid for the purpose of erecting the necessary county buildings, and to that extent it must have directly operated as an inducement to the commissioners to undertake and proceed with the work. That they were authorized by the resolution to do, upon precisely such obligations. And as this was given just nine days after the resolution was adopted, it may reasonably be supposed that it was done in view of the terms used in that resolution. The commissioners were only authorized to accept the land, and proceed with the erection of the building after they had received town and individual bonds, money, and materials, amounting to not less than $30,000. And it was not shown that they did proceed, before they had in that manner received that sum. But as they afterward erected and finished the buildings provided for, and had no other means for doing it than those they were authorized to receive under the resolution appointing them, they must have done so upon the faith and expectation that the promised contributions toward the work, would be provided according to the terms of the obligations given to them for that purpose. And if they did, that supplied a sufficient consideration for the obligations entered into, and delivered to them, for the purpose of inducing them to receive the title to the land, and erect the county buildings upon it. (*Barnes* v. *Perine*, 2 Kernan, 18, 24, 28.)

The guarantee made by the testator was indorsed and executed upon the bond on the same day that the latter was made, and before it was delivered to the commissioners who were the obligees named in it. The bond had not therefore, at that time, become binding as a legal obligation upon the obligor, and no additional consideration was required for the purpose of rendering the guarantee legal and binding beyond that upon which the bond depended. and was expressed on

its face. The consideration sustaining the principal obligation
was sufficient, under those circumstances, for that of the
collateral agreement made by the testator.   They were both
made for the same purpose, and that was to induce the com-
missioners to acquire the title to the land selected for the site
of the county buildings, and to erect those buildings upon it.
That sufficiently appears from the face of the bond ; and as
.the guarantee, for the purpose of ascertaining its considera-
tion, should be construed together with the bond with which
it was given, that also discloses a legal consideration for the
guarantee.   For this purpose, as they were both practically
made at the same time, they are required to be construed
together ; and as thus construed, if a sufficient consideration
appears from the face of the principal obligation to render it
valid and binding, that will also impart legal validity to the
collateral undertaking accompanying it.   (*Union Bank* v.
*Executors of Coster*, 3 Com., 203, 209–10 ; *Church* v. *Brown*,
21 N. Y., 315 ; *Bainbridge* v. *Wade*, 1 Eng. Law & Eq.,
236 ; *Bailey* v. *Freeman*, 11 John., 221, 223.)   In cases of
that description the guarantee does express a sufficient con-
sideration, though none be actually stated by the terms in
which it alone may have been made.   For that purpose it is
to be construed as incorporating within itself the agreement
or instrument to which it may be collateral.   And as so con-
strued, the guarantee in the present case appeared by its
terms to express a sufficient consideration to render it bind-
ing upon the testator.   That is all that is required to consti-
tute a compliance with the statute of frauds, even though, as
amended by chapter 464 of the Laws of 1863, it should still
be construed as rendering it necessary that the collateral
undertaking should express the consideration on which it was
given.

The act of 1868 provided for the assignment of a certain
amount of the bonds and obligations held by the commis-
sioners to the supervisor of the town of Little Valley.   (Laws
of 1868, 12, § 1.)   And the assignment to him of the bond
and guarantee in suit may be properly inferred to have been

made under that authority. It was not invalid because it was executed by but two of the commissioners. For any two of them were authorized by the statute to erect and put up the county buildings. (Laws of 1865, 861, § 3.) And this was an act incidental to the discharge of the duties connected with the promotion of that enterprise. They could only do that by securing the means required for that object, and the assignment made contributed to the production of those means. It was necessarily connected with the other duties the assignors, as commissioners, were required, and, which any two of their number, were authorized to perform. The judgment recovered by the plaintiff was right, and it should be affirmed with costs.

BARKER and E. DARWIN SMITH, JJ., concurring.

Judgment affirmed.